UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| DAVID LUNA, | ) | No. CV 04-10434-PLA |
| Plaintiff, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 28, 2004, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on January 21, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 14, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on November 23, 1955. [Administrative Record ("AR") at 31-32, 124.] He has a high school education and has spent some time in college.[1] [AR at 32, 141.] His previous work experience includes jobs as a forklift operator and tractor-trailer truck driver. [AR at 33, 136.]

On October 24, 2000, plaintiff protectively filed an application for Supplemental Security Income payments, alleging that he had been unable to work since March 13, 2000, due to dizziness, fatigue, shortness of breath, "heavy chest", back pain, and sore feet and ankles. [AR at 124-30, 134-35.] After his application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on January 7, 2003, at which plaintiff appeared with counsel and testified on his own behalf. A medical expert also testified. [AR at 28-60.] The ALJ determined that additional medical examinations of plaintiff were necessary, and adjourned the hearing to allow time for further testing to be conducted. [AR at 59-60.] On August 26, 2003, a second hearing was held, at which plaintiff again appeared and testified. A medical expert and a vocational expert also testified. [AR at 61-83.] On October 28, 2003, the ALJ determined that plaintiff retained the ability to perform a range of sedentary work,[2] and therefore was not disabled. [AR at 15-25.] When the Appeals Council denied review on October 18, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 5-9.]

/
/
/
/

---

[1] Plaintiff testified that he completed high school, but did not graduate. [AR at 32.]

[2] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) and 416.967(a).

# III.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

# IV.

# **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the protective filing date of his application. [AR at 16, 24.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: hypertension, hypertensive cardiomyopathy, peripheral vascular disease, diabetes mellitus, obesity, glaucoma, bilateral cataracts, and a history of calluses on both feet. [AR at 17, 24.] At step three, the ALJ found that the impairments do not meet or equal any impairments in the Listings. [Id.] The ALJ

further determined that plaintiff retains the residual functional capacity[3] to perform a range of sedentary work with certain restrictions.[4] [AR at 21-25.]  At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 23, 25.]  At step five, the ALJ concluded that there are a significant number of jobs in the national economy that plaintiff can perform. [AR at 24-25.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff argues that the ALJ: (1) failed to properly consider the Listing of Impairments at step three of the sequential analysis; and (2) erred in assessing plaintiff's residual functional capacity.  Joint Stipulation ("Joint Stip.") at 4, 10.  As explained below, the Court agrees that the ALJ erred in the step three analysis by not interpreting certain significant probative evidence, and remands the matter for further proceedings with respect to that issue.

### A.   THE ALJ ERRED BY NOT PROPERLY CONSIDERING ALL SIGNIFICANT PROBATIVE EVIDENCE RELATING TO LISTING § 4.08

At step three of the sequential analysis, the ALJ determined that, inter alia, plaintiff has the severe cardiac impairments of hypertension, hypertensive cardiomyopathy, and peripheral vascular disease, but that none of the impairments, either singly or in combination, meet or medically equal any of the impairments in the Listings.  [AR at 17.]  In support of that conclusion, the ALJ noted that neither the treating or examining physicians, nor the testifying medical expert, described findings equivalent in severity to the criteria of any listed impairment. [Id.] Plaintiff, on the other hand, challenges the ALJ's step three analysis, and asserts that certain medical

---

[3]   Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[4]   Specifically, the ALJ determined that plaintiff "can lift twenty pounds occasionally, ten pounds frequently, stand and/or walk two hours and sit six hours in an eight-hour workday. . . [Plaintiff] can only occasionally climb, balance, stoop, kneel, crouch and crawl." [AR at 21.]

evidence demonstrates that he meets and/or equals Listing § 4.08.  See Joint Stip. at 4-6, 8-9.

Listing § 4.08, under the category heading relating to impairments of the cardiovascular system, provides in relevant part:

4.08 *Cardiomyopathies*, documented by appropriate imaging techniques or cardiac catheterization.  Evaluate under the criteria in 4.02, 4.04, 4.05, or 11.04.

Listing 4.04 provides in relevant part:

4.04 *Ischemic heart disease*, with chest discomfort associated with myocardial ischemia, as described in 4.00E3, while on a regimen of prescribed treatment (see 4.00A if there is no regimen of prescribed treatment).  With one of the following:

> A.  Sign- or symptom-limited exercise test demonstrating at least one of the following manifestations at a workload equivalent to 5 METs or less:
>
> * * *
>
> 4.  Failure to increase systolic pressure by 10 mmHg, or decrease in systolic pressure below usual clinical resting level (see 4.00C2b)[.]

According to plaintiff, he satisfies the criteria of Listing § 4.08 because of the following: he suffers from the severe impairment of hypertensive cardiomyopathy, his resting systolic blood pressure is 140, and when he underwent an exercise test on April 15, 2002 [see AR at 220], his systolic blood pressure decreased to 130, which was below his resting level of 140.[5]  Joint Stip. at 9.

Defendant, however, maintains that the ALJ properly determined that none of plaintiff's impairments meet or equal any of the listed impairments. Joint Stip. at 6.  In particular, defendant points out that the medical expert specifically considered sections 4.04 and 4.08 and concluded that no listed impairments were satisfied.  Id. at 4 (citing AR at 57-58, 70-72).  Defendant additionally argues that plaintiff does not meet the criteria of § 4.04 because (1) he failed to

---

[5] As set forth in the Joint Stipulation, plaintiff initially contended that he met the listing because he failed to increase his systolic blood pressure by the requisite amount (i.e., 10 mmHg or more).  See Joint Stip. at 5.  In plaintiff's reply to defendant's contentions, however, he has apparently abandoned that particular argument, and ultimately maintains that the decrease in his systolic blood pressure warrants a finding of disability.  See Joint Stip. at 9.

1  demonstrate that his symptoms persisted despite being on a regimen of prescribed treatment, and
2  (2) plaintiff did, in fact, increase his systolic blood pressure by 10 mmHg (i.e., from 140 to 150)
3  during the exercise stress test. Id. at 8.

4  An ALJ is obligated to make "fairly detailed findings in support of [the] administrative
5  decision[ ]... to permit courts to review [the] decision[ ] intelligently." Vincent v. Heckler, 739 F.2d
6  1393, 1394 (9th Cir. 1984). While a discussion of all of the evidence presented is not necessary,
7  the ALJ "must explain why 'significant probative evidence has been rejected.'" Id. at 1394-95
8  (quoting Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981)).

9  Here, the record contains the results of plaintiff's exercise stress test conducted on April
10 15, 2002. [AR at 219-20.] According to the handwritten notations on the testing form, plaintiff's
11 initial blood pressure was recorded at 140/80. After two minutes of exercise, it rose to 150/80,
12 and after four minutes, it apparently decreased to 130/80. [AR at 220.] Both parties rely on these
13 same results to support their respective arguments -- plaintiff argues that his systolic blood
14 pressure ultimately decreased below the resting level, while defendant contends that plaintiff's
15 systolic blood pressure rose the requisite 10 mmHg.

16 The Court has reviewed the transcripts of the January 7, 2003, and August 26, 2003,
17 hearings. During the first hearing, the ALJ noted that plaintiff underwent an echocardiogram and
18 myocardial perfusion study on April 15, 2002. [AR at 35.] The medical expert testified that plaintiff
19 "does have a radicular cardiac deficit with a low ejection fraction and some other changes on the
20 scan with the diagnosis of cardiomyopathy." [AR at 46-47.] There is no apparent discussion,
21 however, of the findings at issue here -- i.e., whether plaintiff's systolic blood pressure either
22 increased the requisite amount or decreased below the resting level during the stress test. At the
23 adjournment of that hearing, the ALJ ordered plaintiff to undergo additional examinations,
24 including a treadmill test. [AR at 59-60.] During the time between the first and second hearings,
25 plaintiff underwent an examination by Dr. Andre Andresian on February 21, 2003, but no stress
26 test was conducted. [AR at 288-89.] When the second hearing occurred on August 26, 2003,
27 plaintiff reported that, although he had specifically requested the test, Dr. Andresian had declined
28 to administer it. [AR at 66.]  There is nothing in the record indicating why the test was not

performed. The ALJ notes that he arranged for plaintiff to undergo a cardiological evaluation "with a treadmill stress test" after the first hearing, acknowledges that the consultative doctor "did not perform the treadmill stress test" as arranged, and simply speculates that it is "possible that the test was not conducted because [plaintiff] reported that he becomes short of breath and has chest pain after walking just one block." [AR at 19.] At the time of the hearing, the ALJ commented that he did not know why the test was not performed and "won't speculate on that." [AR at 64.] There is no mention of the April 2002 stress test in the second hearing transcript. [See AR at 81-82.]

In the decision, the ALJ observed that plaintiff's electrocardiogram[6] of April 2002 revealed a normal sinus rhythm with left atrial enlargement and left ventricular hypertrophy. [AR at 19.] He does not discuss, however, the particular findings now in dispute regarding plaintiff's systolic blood pressure levels as recorded during the 2002 stress test.[7] Taking into account the parties' differing positions regarding the interpretation of this particular evidence, the Court finds the April 15, 2002, exercise test to be both significant and probative. Because the ALJ failed to make any conclusions or detailed findings about the testing results involving plaintiff's systolic blood pressure levels, and because the ALJ offers no explanation for his initial determination that a stress test was necessary but then reached a decision of no disability without obtaining that test, the Court is unable to review the ALJ's decision intelligently with respect to the issue of whether plaintiff meets Listing § 4.08. See Vincent, 739 F.2d at 1394. Accordingly, the Court concludes that the ALJ erred by not sufficiently considering the pertinent test results to the extent they may satisfy Listing § 4.08. Remand on this issue is therefore warranted to allow the ALJ to revisit the step three analysis while taking into account the April 2002 stress test findings, including the findings concerning plaintiff's systolic blood pressure levels.[8]

---

[6] According to the transcript of the first hearing, the ALJ referred to this study as an echocardiogram. [AR at 35.]

[7] The ALJ does refer to the April 15, 2002, stress test results in pointing out that plaintiff was able to undergo such a test for four minutes. [AR at 22.]

[8] In addition to the requisite exercise test results, Listing § 4.04 also requires that the claimant be on a regimen of prescribed treatment. In the event that there is no such regimen, § 4.00A applies. See Listing § 4.04. In particular, § 4.00A provides that "[w]henever there is

If the ALJ finds that the evidence at issue is inadequate or ambiguous, he may choose to order a further cardiac examination of plaintiff in order to "fully and fairly develop the record ... to assure that [plaintiff's] interests are considered." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam)).

**B.   THE RESIDUAL FUNCTIONAL CAPACITY REGARDING PLAINTIFF'S VISUAL ACUITY WAS NOT IMPROPER**

Although, pursuant to the above discussion, remand in this matter is warranted, the Court is not persuaded that plaintiff's remaining contention relating to the residual functional capacity requires further consideration by the ALJ.

In this matter, the ALJ also found that plaintiff suffers from the severe impairments of glaucoma and bilateral cataracts. [AR at 17.] The record contains numerous readings with respect to plaintiff's visual acuity. The most recent findings are from plaintiff's February 23, 2003, ophthalmological consultative evaluation conducted by Dr. Joseph Kerendian. [AR at 290-92.] During that examination, plaintiff's corrected near visual acuity was 20/40. His corrected distant visual acuity was 20/40 minus two. [AR at 290.]

At the August 26, 2003, hearing, the medical expert testified that a score of "minus two" meant that the individual made two mistakes out of a probable eight figures -- the equivalent to a 25% error rate. [AR at 74.] In turn, the vocational expert testified that the jobs identified as

---

evidence of [medically prescribed] treatment, the longitudinal clinical record must include a description of the therapy prescribed by the treating source and response, in addition to information about the nature and severity of the impairment." Furthermore, "[e]ven though an individual who does not receive treatment may not be able to show an impairment that meets the criteria of these listings, the individual may have an impairment(s) equivalent in severity to one of the listed impairments or be disabled because of a limited residual functional capacity." See Listing § 4.00A. Here, defendant argues that plaintiff fails to satisfy § 4.04 in part because, due to noncompliance with his medications, he has not established that his symptoms persisted despite being on a regimen of prescribed treatment. See Joint Stip. at 8. The Court notes that, in the decision, the ALJ cites several incidents of noncompliance. [AR at 18, 22.] The decision, however, lacks an analysis as to whether plaintiff's treatment regimen satisfies the criteria of Listing § 4.04, or whether the noncompliance negates a determination that plaintiff meets the listing. Upon remand, the ALJ is directed to consider this issue as well, and make appropriate findings.

9

appropriate for plaintiff (i.e., toy and sports equipment stuffer, shoe and boot buckler and lacer, and plastic design applier) require "from a visual standpoint[,] ... occasional to frequent near acuity." [AR at 76, 79-80.] The vocational expert further explained that a person with slightly reduced visual acuity could perform the jobs in question, but "if the mistakes [were] ... made because of a problem with [near visual acuity] ... at [a] level of two out of every eight items ... [t]he errors ... would be too high for an eight-hour day." [AR at 77, 80.]

In assessing plaintiff's RFC, the ALJ concluded that plaintiff's vision was 20/40 in both eyes and did not set forth any visual limitations. [AR at 22-23.]  Plaintiff argues that the results of the February 2003 eye examination establish that his "best vision corrected was 20/40 minus 2" and therefore he is unable to work.  See Joint Stip. at 10.  Plaintiff, however, neglects to discuss the difference between his near and distant visual ability.  Importantly, his distant visual acuity was recorded at 20/40 minus two.  His near vision was 20/40. [AR at 290.]  The vocational expert testified that the identified jobs require occasional to frequent near acuity -- not distant.  Moreover, individuals with slightly reduced vision would still be able to perform the work. [AR at 77.]  Plaintiff's predicted 25% rate of error with respect to his distant vision is therefore not material and does not preclude him from working in the identified jobs.  The Court concludes that remand on this issue is not warranted.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate to allow the ALJ to interpret and make findings regarding plaintiff's April 2002 exercise stress test with respect to step three of the sequential analysis. The ALJ is directed to take whatever further action is deemed appropriate and consistent with this decision.

/

1       Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is **REMANDED** to defendant for further proceedings consistent with this Memorandum Opinion.

      **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 24, 2006

                                                            /S/
                                      PAUL L. ABRAMS
                        UNITED STATES MAGISTRATE JUDGE